Your Name:    MORRIS GREEN JR.

Address:    265 Vernon St. Apt #214, Oakland, CA 94610

Phone Number:    510 – 350 – 7672

Fax Number:    N/A

E-mail Address:

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| MORRIS GREEN JR. | Case Number    [leave blank] |
| --- | --- |
| Plaintiff(s), | **EMPLOYMENT DISCRIMINATION COMPLAINT** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO | |
| SF Public Utilities Commission and all its | DEMAND FOR JURY TRIAL |
| agents involved in their individual and official | Yes  X   No ☐ |
| capacities | |
| Defendant. | |

COMPLAINT

PAGE __1__ OF __37__ *[JDC TEMPLATE – Rev. 08/2016]*

-2-

## PARTIES

1. **Plaintiff.** *[Write your name, address, and phone number.]*

Name: MORRIS GREEN JR.

Address: 265 Vernon St. Apt #214, Oakland, CA  94610

Phone number: 510 – 350 – 7672

2. **Defendant.** *[Write the Defendant's full name, address, and phone number. If your employer is a federal agency or department, list the title of the head of that agency or department.]*

Name: CITY AND COUNTY OF SAN FRANCISCO, SF Public Utilities Commission (SFPUC); Douglas J. Lipps and Lewis Harrison, in their individual and official capacities; SFPUC – EEO Programs/Human Resources Services; and CCSF-Workers' Compensation Division (WCD)

Address:  3801 3rd Street, Suite 600, San Francisco, CA 94124 and 525 Golden Gate Ave, 3rd Floor San Francisco, CA  94102; Phone number: 415 – 554 – 1670

## JURISDICTION

3. My case belongs in federal court under federal question jurisdiction because it is based on *[mark each law that applies]*:

☑ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 *[for claims of discrimination based on race, color, national origin, religion or sex]*

☐ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634

☑ Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117

☐ Rehabilitation Act, 29 U.S.C. §§ 791 *et seq. [for disability claims by federal employees only]*

## VENUE

*The counties in this district are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Circle each venue option that applies.*

4. Venue is appropriate in this Court because: (1) A substantial part of the events I am suing about happened in this district; (2) I am suing the U.S. government, federal agency, or federal official in his or her official capacity AND I live in this district; (3) At least one defendant is located in this District and any other defendants are located in California.

COMPLAINT

PAGE 2 OF 37 *[JDC TEMPLATE – Rev. 08/2016]*

## INTRADISTRICT ASSIGNMENT

*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*

5.    Because this lawsuit arose in San Francisco County, it should be assigned to the San Francisco/Oakland Division of this Court.

## STATEMENT OF FACTS AND CLAIMS

6.    During the relevant time period, I was employed or sought employment by Defendant as *[job title]* 5201 Junior Engineer                                                  .

The job responsibilities included applying engineering principles and practices to civil, mechanical, electrical, environmental, and transportation engineering projects; preparing routine studies, designs, drawings, sketches, and plans using AutoCAD and other software tools; conducting field inspections of existing structures, construction sites and projects; preparing reports, contract specifications, list of materials, cost estimates, schedules, and progress payments; gathering, preparing, and maintaining engineering data, records, and reports.

7.    I filed charges with the Equal Employment Opportunity Commission (or the California Department of Fair Employment and Housing) regarding Defendant's conduct on or about *[date]* May 26, 2016 and May 28, 2015.

8.    The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter, which was received by me on or about *[date] November 17, 2016*. I have attached that Notice to this Complaint. *[attach a copy]*

*[INSTRUCTIONS FOR SPECIFIC EMPLOYMENT CLAIMS: Each of the seven sections below sets out one type of federal employment claim. Not all claims will apply to your situation. Include in your complaint only the claims that you filed with the EEOC/DFEH. PLEASE REVIEW THE INSTRUCTIONS AT THE BEGINNING OF THIS PACKET]*

COMPLAINT

PAGE 3  OF 37 *[JDC TEMPLATE – Rev. 08/2016]*

**FIRST Claim for Relief**

**(Discrimination/Disparate Treatment - Race, Color, Religion, Sex, or National Origin)**

*You may submit a claim for discrimination if an employer took an adverse (negative) employment action against you because of your race, color, religion, sex, or national origin and this claim was included in your EEOC complaint. This claim is also called a "disparate treatment" claim because in it you are stating that the employer treated you differently, or disparately, from employees of another race, color, religion, sex, or national origin. This is not the same as harassment; separate harassment/hostile work environment claim templates follow this one. Only include this claim if your race or color, religion, sex, or national origin was a motivating factor in the decision to take action against you.*

✓. I was able to and did perform my job satisfactorily. *[Explain. For example, if you received good performance reviews, state that here.]* During my five (5+) years of working at San Francisco Public Utilities Commission (SFPUC), Wastewater Enterprise (WWE) Engineering Division from 8/24/2009 to 3/1/2015 my performance appraisal reviews either met or exceeded expectations from my supervisor Meei-Lih Ahmad. I met the minimum qualifications with possession of academic degree.

✓. I was subject to an adverse employment action by Defendant *[mark each applicable and complete]*:

☐ termination on *[date]* _____

☑ refusal to promote me to *[list new position]*5502 Project Manager 1 and other positions on *[date]* January 21, 2015 and before and after.

☑ demotion/significant change in responsibilities *[list new position/responsibilities]* 1. Singled out and unethical, permanent transfer from WWE Engineering to Collection System Division (CSD) that I never approved. The transfer change to a new physical location resulted in me being placed in a work environment that a reasonable person would consider intimidating, hostile, or abusive to the point where my supervisor, computer access, resources, e-time capabilities were changed without my knowledge. 2. In addition, my work responsibilities changed from managing various R&R/JOC projects and supporting capital improvement projects to menial work duties such as watching poor quality sewer videos 8 hours/day, 5 days/ week; while being constantly harassed, falsely accused, isolated, written up, denied opportunities, micromanaged,

COMPLAINT
PAGE 4 OF 37 *[JDC TEMPLATE – 08/16]*

and retaliated against due to my protected category as the only African/Native American engineer at CSD and for filing a discrimination charge, participation in an investigation concerning a coworker's protected health information that was discussed in public, and opposing unfair employment practices.  All of these unfair changes that I experienced, my employer such as Management, Human Resources, etc. were aware of, supported, and failed to prevent the harassment/disparate treatment.  Eventually, the disparate treatment experienced affected my overall health that led me to take off from work on medical leave on 7/30/2015. on *[date]* March 2, 2015 to July 29, 2015.

☑ *[list other action]* Placed on Sick Leave Restriction, write-ups, docking my vacation time for coming to work early, isolation, inappropriate emails and behavior while making false allegations various times, and denying multiple opportunities to attend SSIP Professional Development Retreat and support fellow coworkers with operation, plant tours and safety.  on *[date]* March 2, 2015 to July 29, 2015.

✓.     The sole reason or motivating factor for this action was my *[mark which applies and identify, for instance, if you are alleging race discrimination, state your race]*:

☑ race or color: African American/Native American of Cherokee ancestry.

☐ religion: _____

☐ sex: _____

☐ national origin: _____

*[For each adverse employment action, explain how you know it was based on your race, color, religion, sex, or national origin, and any other facts that support your claim. For example, if the person who took the action made negative comments about your race, color, religion, sex, or national origin, describe those statements and when they occurred. If other employees in a similar job situation, but not of your race, color, religion, sex, or national origin were treated better than you, explain their situation, and how, when, and by whom they were treated better. Use more pages as needed.]*

1. Despite my 9+ years work experience and education, I was denied promotion and/or a chance to interview for 5502 Project Manager 1 position and several other positions that I qualified for and the person(s) that received the position(s) were of a different race and color and does not belong to the same protected category as me African/Native American engineer.

COMPLAINT

PAGE 5 OF 37 *[JDC TEMPLATE – 08/16]*

2. Singled out and treated less favorably than others similarly situated on account of race when I was unethically, permanently reassigned/transferred by Management to a hostile work environment where my supervisor, computer access, resources, e-time capabilities were changed without my knowledge.

3. My work responsibilities changed from managing various R&R/JOC projects and supporting capital improvement projects to being assigned menial work duties (i.e., watching poor quality sewer videos 8 hours/day, 5 days/ week) at WWE-CSD, while other employees in the same position or less, but of a different race, sex, or color was treated better than me and given meaningful work assignments that I could and was qualified to do. In addition, my work demand changed unexpectedly and my supervisor used that to denied me to attend certain events or assist fellow coworkers.

4. Excluded and denied from attending certain training opportunities, professional and career development events, receiving computer resources (i.e., software), and denied computer access (i.e., shared engineering folder, e-time capabilities, etc.), while other employees in the same position or less, but of a different race, sex, or color was treated better than me.

5. Isolated from working with other coworkers to support daily operation, help with safety, conduct inspection, assist with plant tours, etc.

6. Singled out and placing me on Sick Leave Restriction when my health was affected from the constant harassment, retaliation, and disparate treatment I was experiencing at CSD. The restriction required me to provide medical certification for any period of sick leave (either paid or unpaid), including any period of time less than five (5) working days **immediately** upon my return to work from sick leave. If I fail to provide medical certification, my pay may be withheld. In addition, failure to comply with these requirements or failure to decrease incidents of sick leave use will be considered insubordination, and will subject me to progressive disciplinary action, up to and including termination of my employment.

7. Singled out and my supervisor at CSD (Douglas J. Lipps) giving me a pop quiz on coding, inappropriate emails and behavior, blocking my pathway, taping documents to my computer

COMPLAINT

PAGE 6 OF 37 *[JDC TEMPLATE – 08/16]*

screen preventing me from work, denied access to use city vehicle to conduct business affairs, questioning about my lunch and break times, docking my vacation time when I came to work early, using micromanaging tactics when I told him to stop harassing me. I also told him and CSD management (Lewis Harrison and Kent Eickman) numerous times I don't feel comfortable around him, but they did nothing. Even my request to transfer out of the hostile environment or change supervisor was denied and I was told by Lewis Harrison, Manager of CSD that "leaving is not an option", which indicated he supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring.

Overall, I experienced these adverse employment actions while being constantly harassed, intimidation, falsely accused of being Absent Without Leave (i.e., AWOL), isolated, written up, denied opportunities, inappropriate emails and behavior, constantly under surveillance and micromanaged, and retaliated against by CSD supervisor (Douglas J. Lipps) and his co-conspirators, due to my protected category as the only African/Native American engineer at CSD and while other employees in a similar job situation or less, but not of my race, color, religion, sex, or national origin were treated better than me. My employer such as mid to upper Management, fellow coworkers, and Human Resources staff were fully aware of such treatment, but failed to prevent the mistreatment or adverse employment actions from happening. The incidents took place during the time from March 2, 2015 to before July 30, 2015 when I went out on medical leave as requested by my doctor.

COMPLAINT

PAGE 7 OF 37 *[JDC TEMPLATE – 08/16]*

_____ **Claim for Relief**

**(Age Discrimination)**

*You may submit a claim for age discrimination if you experienced an adverse employment action because you were over 40 years old and this claim was included in your EEOC complaint. If you experienced harassment because of your age, but not an adverse employment action, do not use this template; use one of the Hostile Work Environment templates below.*

_____. I was subject to an adverse employment action and harmed by Defendant *[mark each applicable and complete]*:

☐ termination on *[date]* _____

☐ refusal to promote me to *[list new position]* _____

_____ on *[date]* _____

☐ demotion/significant change in responsibilities *[list new position/responsibilities]*

_____

_____ on *[date]* _____

☐ *[list other action]* _____

_____ on *[date]*

_____.

_____. At the time the action was taken, I was over forty years old.

_____. Defendant took this action because of my age, that is, the Defendant would not have taken this action but for my age.

*[Explain why you believe the action was taken because of your age. For example, if a worker under 40 years old took over your responsibilities, or was treated differently than you in similar circumstances, explain that here. Statements about your age made by the person who decided to take the adverse employment action may also be relevant. Use more pages, as needed.]*

_____. _____

_____

_____

_____

_____

_____

COMPLAINT

PAGE __8__ OF __37__ *[JDC TEMPLATE – 08/16]*

## Second Claim for Relief

### (Disability Discrimination/Disparate Treatment)

*You may submit a claim for disability discrimination if your employer took an adverse employment action against you because of your actual disability, or a disability your employer thought you had, and this claim was included in your EEOC complaint.*

✓. Within the meaning of the ADA, a disability is a physical or mental impairment that substantially limits one or more major life activities. *[Mark and complete each that applies]*

☑ On or about *[date]* 7/30/2015 and so on, Defendant became aware that I had a disability when *[explain how it became aware]* I went out on medical leave as requested by my doctor through the Family Medical Leave Act (FMLA) of 1993 and beyond and providing them Request for Leave and Leave Protection documents supported with doctor's letters and/or certification of healthcare provider for FMLA. This was the result from the constant harassment, discrimination, disparate treatment and retaliation that I was experiencing in a hostile work environment at CSD.

☑ On or about *[date]* 7/30/2015 and so on, Defendant became aware of a record that identifies me (accurately or not) as having a disability when *[explain how it became aware]* I went out on medical leave as requested by my doctor through the Family Medical Leave Act (FMLA) of 1993 and beyond and providing them Request for Leave and Leave Protection documents supported with doctor's letters and/or certification of healthcare provider for FMLA. This was the result from the constant harassment, discrimination, disparate treatment and retaliation that I was experiencing in a hostile work environment at CSD, which was different from other employees of another race, color, religion, sex, or national origin.

☑ On or about [date] July 27, 2015, Defendant came to believe I had a disability because *[explain what gave you the impression that Defendant believed you had a disability]* CSD supervisor, Douglas J. Lipps provided me a fact sheet regarding "People with Disabilities" when he placed me on Sick Leave Restriction.

COMPLAINT

PAGE 9 OF 37 *[JDC TEMPLATE – 08/16]*

✓. I was a qualified individual who, with or without a reasonable accommodation,

   a) could perform the essential functions of the position listed in Paragraph 6; and

   b) satisfied the skill, experience, education, and other job-related requirements of the position because *[explain how you met the requirements]* Yes, I could perform the essential functions of the position that is free from constant harassment, disparate treatment, discrimination, and retaliation at the workplace. Based on my academic degrees that I obtained from university, my work experience, and meeting or exceeding expectations through my Performance Appraisals for 2010, 2011, 2012, 2013, and 2014 while working at SFPUC – Wastewater Enterprise; I satisfied the skills, experience, education, and other job-related requirements of the position.

✓. The disability I have or that Defendant saw or believed I had is: Mental disability resulting from excessive occupational work stress and depression while working in a harassing and hostile work environment.

✓. This disability did or would limit my major life activities in the following ways *[for information about what is considered a "major life activity," see federal regulation 29 C.F.R. §1630.2(i)]*: Extreme migraines/headaches and chest pains, muscle tension, chronic stress and depression, trouble concentrating/focusing, difficulty sleeping and eating, loss of appetite, fatigue, little interest in doing things socially and physically, changes in mood, isolation, diminished sex drive, feeling on edge, etc. Overall, the disability that resulted from working in a harassing and hostile work environment affected myself in caring for oneself, performing certain tasks, eating, sleeping, concentrating, focusing, thinking, communicating, interacting with others, and working.

____. This disability was the sole reason or motivating factor for the following adverse employment action(s) taken against me *[mark each applicable and complete]*:

   ☐ termination on *[date]* _____

   ☐ refusal to promote me to *[list new position]* _____

   _____ on *[date]* _____

   ☑ demotion/significant change in responsibilities *[list new position/responsibilities]* My work responsibilities changed from managing various R&R/JOC projects and

COMPLAINT
PAGE 10 OF 37 *[JDC TEMPLATE – 08/16]*

supporting capital improvement projects at WWE Engineering Division to being assigned menial work duties (i.e., watching poor quality sewer videos 8 hours/day, 5 days/ week) at WWE-CSD, while other employees in the same position or less, but of a different race, sex, or color was treated better than me and given meaningful work assignments that I could and was qualified to do. In addition, my work demand changed unexpectedly and my supervisor at CSD used that to denied me to attend certain events or assist fellow coworkers. on *[date]* May 8, 2015 and beyond.

☑ *[list other action]* Threat of disciplinary action, termination of employment, and medical separation that would lead to wrongful termination, which had happened to other coworkers, particularly African Americans in similar cases at SFPUC. The inability and failure of CCSF, SFPUC, Management, and Human Resources to provide my transfer and/or reasonable accommodation request out of the hostile work environment at CSD. on *[date]* March 2, 2015, July 27, 2015 to Present.

*[For each action, explain how you know that it was taken because of your disability. For example, if a supervisor made negative comments about the disability, or other workers who were in similar positions, but did not have this disability, were treated better than you, describe that here.]*

1. Singled out and placing me on Sick Leave Restriction by my CSD supervisor, Douglas J. Lipps when my health was affected from the constant harassment, retaliation, and disparate treatment I was experiencing at CSD. The restriction required me to provide medical certification for any period of sick leave (either paid or unpaid), including any period of time less than five (5) working days **immediately** upon my return to work from sick leave. If I failed to provide medical certification, my pay may be withheld. In addition, failure to comply with these requirements or failure to decrease incidents of sick leave use will be considered insubordination, and will subject me to progressive disciplinary action, up to and including termination of my employment. Overall, threaten that my pay may be withheld, disciplinary action, termination of employment, and medical separation that would lead to wrongful termination  (July 27, 2015).

2. SFPUC such as Management and Human Resources Services – Employee Relations/EEO Programs the inability and failure to provide transfer and/or reasonable accommodation request away from the hostile environment at WWE – Collection System Division (CSD).

COMPLAINT
PAGE 11 OF 37 *[JDC TEMPLATE – 08/16]*

3. Rachel Gardunio, SFPUC Manager, Employee Relations/EEO Programs–HRS authorizing and disabling my work account access on October 5, 2016 when I am still an active employee and on medical leave when other workers who were in similar positions, but did not have this disability were treated better than me. To this date, Ms. Gardunio has yet to restore my work account access back to its original settings after numerous attempts by me in contacting her for this request and even after Ms. Elaine Leeming, Senior Personnel Analyst of SFPUC – EEO Programs, Human Resource Services (HRS) told me "Ms. Gardunio has restored my SFPUC e-mail access via Citrix", which it wasn't after checking on January 5, 2017.

4. City and County of San Francisco, Workers' Compensation Division (CCSF, WCD) denying my rights to receive disability benefits after my State Disability Insurance (SDI) payments was exhausted as of August 4, 2016.

5. After CCSF, WCD denied my claim to receive Workers' Compensation benefits they provided a letter that included some of my personnel records without my permission or authorization to the Qualified Medical Evaluator (QME) physician. The adverse action was an attempt to slander, manipulate, persuade, and negatively influence my medical evaluation related to my disability, which was supposed to be unbiased, impartial and without prejudice. This deliberate and adverse action made the doctor uncomfortable in giving me an evaluation based on the information that was provided to him by CCSF, WCD and their third party agent representative. Ultimately, my scheduled appointment was canceled an hour before on the same day (January 31, 2017).

COMPLAINT

PAGE 12 OF 37 *[JDC TEMPLATE – 08/16]*

## Third Claim for Relief

## (Disability Discrimination - Failure to Provide Reasonable Accommodation)

*You may bring this claim if your employer had an obligation to accommodate your disability and failed to do so and this claim was included in your EEOC complaint. Whether an employer was required to make an accommodation depends on whether the employer knew of your disability and need for an accommodation, you were otherwise qualified for the job, and the accommodation was reasonable.*

✓. Within the meaning of the ADA, a disability is a physical or mental impairment that substantially limits one or more major life activities. I have the following disability: Mental disability resulting from excessive occupational work stress and depression while working in a harassing and hostile work environment.

✓. This disability limits my major life activities in the following ways *[for information about what is considered a "major life activity," see federal regulation 29 C.F.R. §1630.2(i)]*: Extreme migraines/headaches and chest pains, muscle tension, chronic stress and depression, trouble concentrating/focusing, difficulty sleeping and eating, loss of appetite, fatigue, little interest in doing things socially and physically, changes in mood, isolation, diminished sex drive, feeling on edge, etc. Overall, the disability that resulted from working in a harassing and hostile work environment affected myself in caring for oneself, performing certain tasks, eating, sleeping, concentrating, focusing, thinking, communicating, interacting with others, and working.

---

✓. I was a qualified individual who, with or without a reasonable accommodation,

    a) could perform the essential functions of the position listed in Paragraph 6; and

    b) satisfied the skill, experience, education, and other job-related requirements of the position because *[explain how you met the requirements]* Yes, I could perform the essential functions of the position that is free from constant harassment, disparate treatment, discrimination, and retaliation at the workplace. Based on my academic degrees that I obtained from university, my work experience, and meeting or exceeding expectations through my Performance Appraisals for 2010, 2011, 2012, 2013, and 2014 while working

COMPLAINT
PAGE 13 OF 37 *[JDC TEMPLATE – 08/16]*

at SFPUC – Wastewater Enterprise; I satisfied the skills, experience, education, and other job-related requirements of the position.

✓. Defendant failed to accommodate my disability even though *[mark each applicable and explain]*: ☑ I requested an accommodation *[explain what you asked for, when the request was made, to whom, and Defendant's response]*: I requested to be transferred or reassigned out of the harassing and hostile work environment numerous times from March 2015 to Present to WWE CSD Management, SFPUC Management, SFPUC EEO Programs–Human Resource Services (HRS) to a healthy and fair environment, free from harassment, discrimination, and retaliation. My request was made to various people (i.e., Lewis Harrison, Manager of CSD, Douglas J. Lipps, CSD supervisor; Kent Eickman, CSD Technical Services Section Manager; Rachel Gardunio, Manager of SFPUC Employee Relations/EEO Programs, HRS; Charla Welch, Senior Analyst – HRS; Cindy Charan, SFPUC Human Resources Services (HRS) Director; Harlan Kelly, Jr., SFPUC General Manger; Kathryn (Kathy) How, AGM of Infrastructure; Deborah Walters, Manager; Local 21 Union Representative – Paul Kim; Gary Fleming, Mechanical Engineering Section Manager; and many more.

In fact on April 27, 2015, Lewis Harrison, Manager of CSD stated in our meeting that "leaving is not an option" and to continue working under Douglas, when he denied my request to transfer out or change supervisor, which indicates he supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring.

As of today, with all the individuals I spoke to my reasonable accommodation request for transfer to a healthy and comfortable working environment has yet to be fulfilled by WWE CSD Management, SFPUC Management, or SFPUC EEO – HRS.

☑ Defendant knew, or had reason to know all of the following:

a)  I have a disability within the meaning of the ADA;

b)  I was experiencing workplace problems because of this disability *[describe the problems and how they related to your disability]*: The workplace problems that I experienced included:

COMPLAINT
PAGE 14 OF 37 *[JDC TEMPLATE – 08/16]*

1. Singled out and treated less favorably than others similarly situated on account of race when I was unethically, permanently reassigned/transferred by Management to a hostile work environment where my supervisor, computer access, resources, e-time capabilities were changed without my knowledge.

2. My work responsibilities changed from managing various R&R/JOC projects and supporting capital improvement projects to being assigned menial work duties (i.e., watching poor quality sewer videos 8 hours/day, 5 days/ week), while other employees in the same position or less, but of a different race, sex, or color was treated better than me and given meaningful work assignments that I could and was qualified to do. In addition, my work demand changed unexpectedly and my supervisor used that to denied me to attend certain events or assist fellow coworkers.

3. Excluded and denied from attending certain training opportunities, professional and career development events, receiving computer resources (i.e., software), and denied computer access (i.e., shared engineering folder, e-time capabilities, etc.), while other employees in the same position or less, but of a different race, sex, or color was treated better than me.

4. Isolated from working with other coworkers to support daily operation, help with safety, conduct inspection, assist with plant tours, etc.

5. Singled out and placing me on Sick Leave Restriction when my health was affected from the constant harassment, retaliation, and disparate treatment I was experiencing at CSD. The restriction required me to provide medical certification for any period of sick leave (either paid or unpaid), including any period of time less than five (5) working days **immediately** upon my return to work from sick leave. If I fail to provide medical certification, my pay may be withheld. In addition, failure to comply with these requirements or failure to decrease incidents of sick leave use will be considered insubordination, and will subject me to progressive disciplinary action, up to and including termination of my employment.

6. Singled out and my supervisor at CSD (Douglas J. Lipps) giving me a pop quiz on coding, inappropriate emails and behavior, blocking my pathway, taping documents to my computer screen preventing me from work, denied access to use city vehicle to conduct business

COMPLAINT

PAGE 15 OF 37 [JDC TEMPLATE – 08/16]

affairs, questioning about my lunch and break times, docking my vacation time when I came to work early, using micromanaging tactics when I told him to stop harassing me. I also told him and management (Lewis Harrison and Kent Eickman) numerous times I don't feel comfortable around him, but they did nothing. Even my request to transfer out of the hostile environment or change supervisor was denied and was told by Lewis Harrison, Manager of CSD that "leaving is not an option" and to continue working under Douglas, which indicated they supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring.

7. SFPUC such as Management and Human Resources Services – Employee Relations/EEO Programs the inability and failure to provide transfer and/or reasonable accommodation request away from the hostile environment at WWE – Collection System Division (CSD).

8. Rachel Gardunio, SFPUC Manager, Employee Relations/EEO Programs–HRS authorizing and disabling my work account access on October 5, 2016 when I'm still an active employee and on medical leave when other workers who were in similar positions, but did not have this disability were treated better than me. To this date, Ms. Gardunio has yet to restore my work account access back to its original settings after numerous attempts by me in contacting her for this request and even after Ms. Elaine Leeming, Senior Personnel Analyst of SFPUC – EEO Programs, Human Resource Services (HRS) told me "Ms. Gardunio has restored my SFPUC e-mail access via Citrix", which it wasn't after checking on January 5, 2017.

Overall, I experienced these workplace problems while being constantly harassed; intimidated; falsely accused of being Absent Without Leave (i.e., AWOL); isolated; written up; threaten with disciplinary action, termination of employment, and medical separation; denied opportunities; inappropriate emails and behavior; constantly under surveillance and micromanaged; and retaliated against by my CSD supervisor (Douglas J. Lipps) and his co-conspirators, due to my protected category as the only African/Native American engineer at CSD and while other employees in a similar job situation or less, but not of my race, color, religion, sex, or national origin were treated better than me. My employer (i.e., Management, fellow coworkers, and Human Resources staff) were fully aware of such treatment, but failed to prevent the mistreatment or adverse employment actions from happening. The incidents

COMPLAINT
PAGE 16 OF 37 [JDC TEMPLATE – 08/16]

took place during the time from March 2, 2015 to before July 30, 2015 when I went out on medical leave as requested by my doctor.

Note: I didn't come there with the disability. The disability resulted from working in a harassing and hostile work environment at CSD, which took a tremendous toil on my health and a burden socially, mentally, emotionally, and financially; and

      c) This disability prevented me from requesting a reasonable accommodation *[explain what aspects of your disability made it difficult for you to communicate that you needed an accommodation]* _____

_____

_____

_____

_____

✓. Defendant could have made a reasonable accommodation *[identify the accommodation(s)]*: The Defendant could have made a reasonable accommodation by granting my ongoing request for reassignment/transfer away from the harassing and hostile work environment at CSD, but they didn't. I tried every attempt to resolve this matter amicably by speaking with the CSD supervisor, CSD and SFPUC Management, SFPUC EEO Program – Human Resource Services personnel, Local 21, U.S. EEOC, but nothing changed and the mistreatment continued. In fact, when I spoke to Lewis Harrison, Manager of CSD about my request to transfer out or change supervisor it was denied and I was told that "leaving is not an option", which indicated to me he supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring. I prefer to transfer to a healthy/positive work environment that is fair and free from harassment, discrimination, retaliation, etc.

The accommodation would have enabled me to *[mark applicable]*: ☐ qualify for the position; ☑ perform the essential functions of the job; ☑ other *[explain]* Be at peace, so I can focus, think, and concentrate better in doing my job effectively without the negative distractions or disparate treatment.

COMPLAINT
PAGE 17 OF 37 *[JDC TEMPLATE – 08/16]*

### Fourth Claim for Relief

### (Hostile Work Environment Created by Plaintiff's Supervisor)

*You may submit this claim if you experienced harassment based on your race, color, religion, sex, national origin, or age over 40, and that harassment was serious enough to create a hostile work environment, and this claim was included in your EEOC complaint. Only submit this section if your supervisor harassed you. If a co-worker harassed you, submit the claim that follows this one.*

✓. I was subjected to harassment by my supervisor, *[name and title]* <u>Douglas J. Lipps, Mechanical Engineer</u>, who was empowered by the employer to take tangible employment actions *[such as firing, promoting, changing responsibilities, and reassignment]* against me.

✓. This harassment happened because of my *[mark applicable and identify]*:

☑ race or color: <u>African American/Native American of Cherokee ancestry</u>.

☐ religion:_____

☐ sex: _____

☐ national origin:_____

☐ age (at the time of harassment):_____

☑ disability *[identify the physical or mental condition and explain how it substantially limits one or more of your major life activities; for information about what is considered a "major life activity," see federal regulation 29 C.F.R. §1630.2(i)]*: <u>Extreme migraines/headaches and chest pains, muscle tension, chronic stress and depression, trouble concentrating/focusing, difficulty sleeping and eating, loss of appetite, fatigue, little interest in doing things socially and physically, changes in mood, isolation, diminished sex drive, feeling on edge, etc. Overall, the mental disability that resulted from working in a harassing and hostile work environment affected myself in caring for oneself, performing certain tasks, eating, sleeping, concentrating, thinking, communicating, interacting with others, and working.</u>

✓. This conduct was unwelcome, and was sufficiently serious or happened often enough to change the conditions of my employment and create an abusive or hostile work environment.

✓. A reasonable person in these circumstances would consider the working environment to be abusive or hostile. I was harmed by this abusive or hostile working environment.

COMPLAINT
PAGE 18 OF 37 *[JDC TEMPLATE – 08/16]*

*[Describe the harassment, including what happened, when, how often, who was involved, and how each person was involved. This section must also make clear how you know the harassment was based on your race, color, religion, sex, national origin, or age over 40. It is best to write this in date order, starting with what happened earliest, and ending with what happened more recently. Use more pages as needed.]*

There were many aspects of harassment that took place while I was unethically, permanently reassigned/transferred on March 2, 2015 by WWE Engineering Division and CSD Management. The harassment occurred daily under Douglas J. Lipps supervision, who contributed a lot of the harassment that affected my health.

The parties involved in this ordeal who approved my move, were fully aware of such treatment and did nothing to prevent such harassment included: Lewis Harrison, Manager of CSD; Brian Henderson, Manager of WWE Engineering Division; Kent Eickman, CSD Technical Services Section Manager; Douglas J. Lipps, CSD supervisor; Meei-Lih Ahmad, Environmental Planning Section Manager; Rachel Gardunio, Manager of SFPUC Employee Relations/EEO Programs, HRS; Charla Welch, Senior Analyst – HRS; Cindy Charan, SFPUC Human Resources Services (HRS) Director; Harlan Kelly, Jr., SFPUC General Manger; Tommy Moala, AGM of Wastewater Enterprise; Kathryn (Kathy) How, AGM of Infrastructure; Deborah Walters, Manager; Local 21 Union Representative – Paul Kim; Gary Fleming, Mechanical Engineering Section Manager; Mabel Chow (Adm.), and many more.

I know that based on my race and color (protected category) and being the only African/Native American engineer I experienced such harassment, retaliation, and disparate treatment at CSD and while other employees in a similar job situation or less, but not of my race, color, religion, sex, or national origin were treated better than me.

**Such Harassment Included:**

1. Singled out and treated less favorably than others similarly situated on account of race when I was unethically, permanently reassigned/transferred on March 2, 2015 by WWE Engineering Division and CSD Management, to a hostile work environment at CSD where my supervisor, computer access, resources, e-time capabilities were changed without my knowledge. Subsequently, the harassment, retaliation, and disparate treatment ensued after my complaints to Management on how I was lied to and treated.

COMPLAINT

PAGE 19 OF 37 *[JDC TEMPLATE – 08/16]*

2. My work responsibilities changed from managing various R&R/JOC projects and supporting capital improvement projects to being assigned reduced/menial work duties (i.e., watching poor quality sewer videos 8 hours/day, 5 days/ week) by Mr. Lipps (May and June 2015), while other employees in the same position or less, but of a different race, sex, or color was treated better than me and given meaningful work assignments that I could and was qualified to do. In addition, my work demand changed unexpectedly and my supervisor used that to deny me opportunities to attend professional development event when I was selected (Karen Kubick) or assist fellow coworkers in field support and/or safety (June 2015).

3. Excluded and denied from attending certain training opportunities, professional and career development events, receiving computer resources to perform work-related task (i.e., Visio software), and denied/removed computer access capabilities (i.e., shared engineering folder, e-time capabilities enabling to do my timesheets etc.), while other employees in the same position or less, but of a different race, sex, or color was treated better than me.

4. Isolated from working with other coworkers to support daily operation, help with safety, conduct inspection, assist with plant tours, etc. (Mitchelle Borja and Jonathan Smith).

5. Singled out and my supervisor at CSD (Douglas J. Lipps) giving me a pop quiz on coding (Kent Eickman present); inappropriate emails and behavior; blocking my pathway; taping documents to my computer screen preventing me from working (July 2015); denied access to use city vehicle to conduct business affairs; questioning about my lunch and break times and whereabouts; docking my vacation time when I came to work early; unfairly disciplining me using In/Out Procedure while others go unchecked; using micromanaging tactics and I told him to stop harassing me (Lee Ann Prifti present). I also told him and management (Lewis Harrison and Kent Eickman) numerous times I don't feel comfortable around him, but they did nothing. Even my request to transfer out of the hostile environment or change supervisor was denied and I was told by Lewis Harrison, CSD Manager (April 27, 2015) that "leaving is not an option" and he wanted me to continue working under Douglas, which indicated they supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring.

6. Douglas J. Lipps numerous attempts to slander my name by falsely accusing me of being Absent Without Leave (AWOL), questioning about my whereabouts (i.e., Stress Management & Resiliency Training), and not properly doing my work (numerous times).

7. Douglas J. Lipps denied use or approval of my personal time (i.e., sick and vacation time), when Kent Eickman approved it (May 2015).

8. Singled out and Douglas placing me on Sick Leave Restriction (July 27, 2015) when my health was affected from the constant harassment, retaliation, and disparate treatment I was experiencing at CSD under his supervision. The restriction required me to provide medical certification for any period of sick leave (either paid or unpaid), including any period of time less than five (5) working days **immediately** upon my return to work from sick leave. If I fail to provide medical certification, my pay may be withheld. In addition, failure to comply with these requirements or failure to decrease incidents of sick leave use will be considered insubordination, and will subject me to progressive disciplinary action, up to and including termination of my employment.

9. Douglas constantly sending me email regarding work while I'm out on medical leave since July 30, 2015, as a result of constant harassment, retaliation, and discrimination I've endured and continue to endure while working at CSD.

10. Threat of disciplinary action, termination of employment, and medical separation that would lead to wrongful termination.

COMPLAINT

PAGE 21 OF 37 *[JDC TEMPLATE – 08/16]*

### Fifth Claim for Relief

### (Hostile Work Environment Created by Plaintiff's Co-worker)

*You may submit this claim if you were harassed because of your race, color, religion, sex, national origin, age over 40, or disability, that harassment was serious enough to create a hostile work environment, your employer did not take appropriate action once it knew or should have known about the harassment, and this claim was included in your EEOC complaint. Only submit this claim if your co-worker or non-direct supervisor harassed you. If your direct supervisor harassed you, submit the claim before this.*

✓.    Co-workers harassed me because of my *[mark applicable and identify]*:

☑ race or color: <u>African American/Native American of Cherokee ancestry.</u>

☐ religion: _____

☐ sex: _____

☐ national origin: _____

☐ age at the time of harassment: _____

☑ disability *[identify the condition and explain how it substantially limits one or more of your major life activities; for information about what is considered a "major life activity," see federal regulation 29 C.F.R. §1630.2(i)]*: <u>Extreme migraines/ headaches and chest pains, muscle tension, chronic stress and depression, trouble concentrating/focusing, difficulty sleeping and eating, loss of appetite, fatigue, little interest in doing things socially and physically, changes in mood, isolation, diminished sex drive, feeling on edge, etc. Overall, the mental disability that resulted from working in a harassing and hostile work environment affected myself in caring for oneself, performing certain tasks, eating, sleeping, concentrating, focusing, thinking, communicating, interacting with others, and working.</u>

✓.    This conduct was unwelcome, and was sufficiently serious or happened often enough to change the conditions of my employment and create an abusive or hostile work environment, and a reasonable person in these circumstances would consider the environment to be abusive or hostile.

*[State the facts supporting your claim of harassment. Explain what happened and when, and who was involved. This section must also make clear how you know the action was based on your race, color, religion, sex, national origin, or age over 40. Insert more pages.]*

COMPLAINT

PAGE 22 OF 37 *[JDC TEMPLATE – 08/16]*

1. I was approached both by Douglas J. Lipps and Kaumil Parghi, Assistant Engineer at CSD, on May 1, 2015 about my production and the need to produce 1250 linear feet (LF/day) of coding inspection. I've explained again to the both of them, that my training for NASSCO coding of pipelines, manholes and laterals, was completed on April 16th, 2015 that because I am relatively new in coding to produce 1250 LF/day of video survey inspection is simply not feasible at this time and exceedingly unreasonable. It should be noted that Kaumil has five (5+) years of experience in NASSCO coding of pipelines. Also, during the surprise meeting in which Kaumil evaluated my work without my knowledge, Kaumil suggested a document that would be helpful to me in coding, but Douglas said "no" not to provide it to me.

2. On May 13, 2015, I was approached by fellow coworker, Kaumil Parghi again, regarding the increased production demand (1250 LF/day) placed on me in coding the main sewer lines in Pipelogix. Kaumil informed me that I was behind schedule and that if I remained behind schedule, like others in the past that I "would be gone." I felt that his response was a verbal intimidation tactic intended to instill fear and threaten my job, my livelihood, and myself. I made Kaumil aware of my feelings. He disagreed, characterizing his statement as "motivation" and later calling it "light-humored". Kaumil also stated that he was a messenger. When I asked, "Who sent you?" he stated that he was the messenger for the entire Technical Services Section. When I asked him again, Kaumil wouldn't disclose any details.

3. Another incident, on May 14, 2015 Douglas approached me to inform me how both he and Kaumil completed a video coding survey inspection in about 20 minutes. After the previous unpleasant incident with Kaumil, Douglas wanted Kaumil to sit with me once again to go over video survey inspection in Pipelogix. Therefore, it seems that Douglas supports Kaumil's demands and style, and approach because he told me to follow Kaumil's direction even though my coding concerns (i.e., the poor quality sewer videos, insufficient lighting, speed of the survey camera and other issues) and my newness to sewer coding was legitimate

4. This is not the first time I felt pressured or threatened by Kaumil or others. He also told me a couple of weeks ago that if I don't follow/listen to what he's instructed regarding coding video surveys and removing sewer defect photos, which I felt were relevant to include in the

COMPLAINT

PAGE _23_ OF _37_ [JDC TEMPLATE – 08/16]

report, that he will tell Douglas J. Lipps, in which he did several times. These inappropriate behavior events fosters a hostile work climate and violates the "Work Climate Expectations" document that was provided to me by Mr. Lipps on March 13, 2015.

5. Due to the constant harassment, stress, and pressure that I was suffering from Douglas and Kaumil and their behavior, I went out on medical sick leave as requested by my doctor from May 26 to 31, 2015. Kaumil replied that I am sick because "he is constantly eating chips". Note: I was the only African/Native American engineer going through this while other coworkers of other race were not.

✓. Defendant or a member of the Defendant's management knew or should have known of the harassment:

*[State who in management knew or should have known of the harassment, as well as when and how they found out or should have found out. For example, if you told someone in management about the harassment, a manager saw or heard the harassment, or others have complained to management of harassment by the same person who harassed you, explain that here.]*

1. Multiple times Management was fully aware of the harassment that I endured and my complaints through emails meetings, and face-to-face conversations from March 2015 to the present. Lewis Harrison, Manager of CSD; Douglas J. Lipps, CSD supervisor; Kent Eickman, CSD Technical Services Section Manager; Cindy Charan, SFPUC Human Resources Services (HRS) Director; Rachel Gardunio, Manager of SFPUC Employee Relations/EEO Programs, HRS; Charla Welch, Senior Analyst – HRS; Biran Shah, Personnel Analyst – HRS; Harlan Kelly, Jr., SFPUC General Manger; Tommy T. Moala, AGM of Wastewater Enterprise (WWE); Kathryn (Kathy) How, AGM of Infrastructure; Deborah Walters, Manager; Local 21 Union Representative – Paul Kim; Gary Fleming, Mechanical Engineering Section Manager; and many more.

2. I know that other coworkers complained about Douglas J. Lipps and Kaumil Parghi behavior in the past, which is why most people don't feel comfortable working with them.

COMPLAINT
PAGE 24 OF 37 *[JDC TEMPLATE – 08/16]*

✓. Defendant failed to take prompt action reasonably calculated to end the harassment, and I was harmed by this failure:

*[Explain what Defendant did in response to the harassment, whether the harassment ended, and why this response was not likely to end the harassment. Use more pages as needed.]*

1. The harassment didn't end.  I still received inappropriate behavior and emails from Mr. Lipps when I was out on medical leave and my request to be transferred or reassigned away from the harassing and hostile work environment was not fulfilled after several times to Management and Human Resource staff from March 2015 to present.

### Sixth Claim for Relief

### (Retaliation)

*You may submit this claim if you were retaliated against by your employer for complaining about discrimination on the basis of race, color, religion, sex, national origin, age or disability, or for participating in an investigation of discrimination, and this claim was included in your EEOC complaint. Retaliation means that you experienced an employment action that would discourage a reasonable worker from making or supporting a complaint of discrimination.*

✓. I engaged in protected activity *[mark each applicable and complete]*:

☑ On *[date]* Various dates (June 25, 2015 and June 10, 2015), I complained to *[name and title]* Harlan Kelly, Jr., SFPUC General Manger; Kathryn (Kathy) How, AGM of Infrastructure; Deborah Walters, Manager and many others; before and after I filed my initial EEOC charge in 2015 and 2016 about discrimination on the basis of: ☑ race or color; ☐ religion; ☐ sex; ☐ national origin; ☐ age; ☑ disability.

☑ On *[date]* Middle of 2014 (between June and September) and February 2015, I participated in an investigation or hearing by *[describe your participation]* 1. Tony Flores, WWE Operations Division Manager about another employee (Ken Olivencia) discussing Dolores Johnson's protected health information in public (Mid. of 2014); 2. Andreas Gourdine, Interim SFPUC Human Resource Services Director about SFPUC's unfair hiring practices, policies, and procedures regarding several positions that I applied to, but I didn't received a favorable response; and 3. EEOC complaints and complaint about working and the disparate treatment I was experiencing at CSD. The investigation or hearing related to discrimination on the basis of: ☑ race or color; ☐ religion; ☐ sex; ☐ national origin; ☐ age; ☑ disability.

✓. Because of this protected activity, I was subject to an adverse employment action and harmed by defendant *[mark each applicable and complete]*:

☐ termination on *[date]* _____

☑ refusal to promote me to *[list new position]* 5502 Project Manager 1 and other positions on *[date]* January 21, 2015 and before and after.

☑ demotion/significant change in responsibilities *[list new position/responsibilities]*

COMPLAINT

PAGE 26 OF 37 *[JDC TEMPLATE – 08/1C]*

1. Singled out and unethical, permanent transfer from WWE Engineering to Collection System Division (CSD) that I never approved. The transfer change to a new physical location resulted in me being placed in a work environment that a reasonable person would consider intimidating, hostile, or abusive to the point where my supervisor, computer access, resources, e-time capabilities were changed without my knowledge. 2. In addition, my work responsibilities changed from managing various R&R/JOC projects and supporting capital improvement projects to reduced/menial work duties (i.e., watching poor quality sewer videos 8 hours/day, 5 days/ week) at WWE-CSD, while other employees in the same position or less, but of a different race, sex, or color was treated better than me and given meaningful work assignments that I could and was qualified to do. In addition, my work demand changed unexpectedly and my supervisor used that to denied me to attend certain events or assist fellow coworkers.

This happened while I was being constantly harassed, falsely accused of being AWOL, isolated, written up, denied opportunities, micromanaged, and retaliated against due to my protected category as the only African/Native American engineer at CSD, my numerous complaints made to Management, for filing EEOC discrimination charges, participation in an investigation concerning a coworker's protected health information that was discussed in public, and opposing unfair employment practices.

All of these unwanted changes that I experienced, my employer such as Management, Human Resources, etc. were fully aware of, supported, and failed to prevent the harassment/disparate treatment. Eventually, the retaliation and disparate treatment that I experienced affected my overall health, which led me to take off from work on medical leave on 7/30/2015. on *[date]* March 2, 2015 to July 29, 2015. ☑ *[list other action]* Being placed on Sick Leave Restriction, write-ups, docking my vacation time for coming to work early, isolation, inappropriate emails and behavior while making false allegations various times, and denying multiple opportunities to attend SSIP Professional Development Retreat and support fellow coworkers with operation, plant tours and safety. on *[date]* March 2, 2015 to July 29, 2015.

COMPLAINT
PAGE 27 OF 37 *[JDC TEMPLATE – 08/16]*

*[Explain any other information that makes you think that the adverse employment action was taken to retaliate against you for making a complaint or participating in an investigation of discrimination. If the amount of time between the two events is the only reason, you can leave this page out. Otherwise, add pages as needed.]*

1. In terms of retaliation, I have been subjected to many inappropriate and false statements by CSD supervisor, Douglas J. Lippps in his many emails and write ups, intimidation, constant harassment, denial of opportunity related to professional development and field support, disparate treatment, constant surveillance and micromanaging tactics, disciplinary action with the improper use of the In/Out Board as a disciplinary tool, questioning my whereabouts, changes to my work location and work assignment/responsibilities, and management decision to not end the harassment that I was experiencing at CSD or grant my request to transfer away for that hostile environment.

2. Excluded and denied from attending certain training opportunities, professional and career development events, receiving computer resources (i.e., software), and denied computer access (i.e., shared engineering folder, e-time capabilities, etc.), while other employees in the same position or less, but of a different race, sex, or color was treated better than me.

3. Isolated from working with other coworkers to support daily operation, help with safety, conduct inspection, assist with plant tours, etc.

4. Singled out and placing me on Sick Leave Restriction by my CSD supervisor, Douglas J. Lipps when my health was affected from the constant harassment, retaliation, and disparate treatment I was experiencing at CSD. The restriction required me to provide medical certification for any period of sick leave (either paid or unpaid), including any period of time less than five (5) working days **immediately** upon my return to work from sick leave. If I fail to provide medical certification, my pay may be withheld. In addition, failure to comply with these requirements or failure to decrease incidents of sick leave use will be considered insubordination, and will subject me to progressive disciplinary action, up to and including termination of my employment.

5. Singled out and my supervisor at CSD (Douglas J. Lipps) giving me a pop quiz on coding, inappropriate emails and behavior, blocking my pathway, taping documents to my computer screen preventing me from work, denied access to use city vehicle to conduct business affairs, questioning about my lunch and break times, docking my vacation time when I came to work early, using micromanaging tactics when I told him to stop harassing me. I also told him and CSD management

COMPLAINT

PAGE 28 OF 37 *[JDC TEMPLATE – 08/16]*

(Lewis Harrison and Kent Eickman) numerous times I don't feel comfortable around him, but they did nothing. Even my request to transfer out of the hostile environment or change supervisor was denied and I was told by Lewis Harrison, Manager of CSD on April 27, 2015 that "leaving is not an option", which indicated he supported Mr. Lipps' behavior and failed to prevent the mistreatment from occurring.

6. SFPUC such as Management and Human Resources Services – Employee Relations/EEO Programs the inability and failure to provide transfer and/or reasonable accommodation request away from the hostile environment at WWE – Collection System Division (CSD).

7. Rachel Gardunio, SFPUC Manager, Employee Relations/EEO Programs–HRS authorizing and disabling my work account access on October 5, 2016 when I am still an active employee and on medical leave when other workers who were in similar positions, but did not have this disability were treated better than me. To this date, Ms. Gardunio has yet to restore my work account access back to its original settings after numerous attempts by me in contacting her for this request and even after Ms. Elaine Leeming, Senior Personnel Analyst of SFPUC – EEO Programs, Human Resource Services (HRS) told me "Ms. Gardunio has restored my SFPUC e-mail access via Citrix", which it wasn't after checking on January 5, 2017.

8. City and County of San Francisco, Workers' Compensation Division (CCSF, WCD) denying my rights to receive disability benefits after my State Disability Insurance (SDI) payments was exhausted as of August 4, 2016.

9. After CCSF, WCD denied my claim to receive Workers' Compensation benefits they provided a letter that included some of my personnel records without my permission or authorization to the Qualified Medical Evaluator (QME) physician. The adverse action was an attempt to slander, manipulate, persuade, and negatively influence my medical evaluation related to my disability, which was supposed to be unbiased, impartial and without prejudice. This deliberate and adverse action made the doctor uncomfortable in giving me an evaluation based on the information that was provided to him by CCSF, WCD and their third party agent representative. Ultimately, my scheduled appointment was canceled an hour before on the same day (January 31, 2017).

COMPLAINT
PAGE 29 OF 37 [JDC TEMPLATE – 08/16]

## Demand for Relief

Plaintiff respectfully requests the following relief:

1. Equitable relief *[such as reinstatement, back pay, or front pay]*

2. Compensatory damages *[such as for emotional distress and costs of finding new employment]*

3. Costs and attorneys' fees as permitted by law

4. Any other relief the Court deems proper

☑ *[list other relief]*<u>Punitive damages from the health and monetary loss I suffered and to be transferred or reassigned out of the hostile work environment at CSD.</u>

*[Note this list does not include punitive damages. In certain cases, punitive damages may be awarded if the employer engaged in discrimination with malice, oppression, or reckless indifference to your rights under federal law. If this applies to your case, mark the box above, write in punitive damages, and make sure that the pages in your Complaint include facts to show that your employer acted with malice, oppression, or reckless indifference to your rights.]*

## Demand for Jury Trial

Plaintiff demands a jury trial on all issues.

*By signing this Complaint, you are stating that you reasonably believe there is evidence to support all of the statements in each of the claims you are submitting. This includes the form statements as well as the statements you wrote in yourself.*

Respectfully submitted,

Date:    February 2, 2017    Sign Name: _____

Print Name:    Morris Green Jr.

COMPLAINT

PAGE 30 OF 37 *[JDC TEMPLATE – 08/16]*

## *Summary of Position, Background and Work Culture*

Since 2006, I have been a Junior Engineer at SFPUC for a total of nine (9) years. Within those years of service, I have worked in various bureaus (i.e., Construction Management Bureau (CMB), Engineering Management Bureau (EMB), Program Controls and Support Bureau (PCSB), which is now Project Management Bureau (PMB) and Wastewater Enterprise (WWE)), where I received some valuable experience as an Engineer related to construction management, design, cost and schedule control, project management, and wastewater treatment operations, to name a few.

During my five (5+) years of working at San Francisco Public Utilities Commission (SFPUC), Wastewater Enterprise (WWE) Engineering Division from 8/24/2009 to 3/1/2015 my performance appraisal reviews either met or exceeded expectations from my supervisor, Meei-Lih Ahmad. I met the minimum qualifications with possession of academic degrees.

Given my many years of service at SFPUC, accompanied with my educational background (i.e., Possess academic degrees in both Engineering and Urban Planning), and work experience, I am qualified for several positions for which I have applied to. But, as reality sets in I have discovered while employed at this utility agency, which is geared towards providing various levels of services (i.e., water, wastewater/ sewer treatment, and power) to the public; that ultimately it fails the objective of its own mission statement to provide Equal Employment Opportunities and delivering fairness to its employees, particularly African Americans (AA).

African American/Black employees are routinely treated unfairly at SFPUC in terms of denial of promotional opportunities, advancements at the same rate as other employees work, additional trainings (outside of mandatory trainings), managerial support, as well as job-related resources provided to assist employees in performing and/or accomplishing their work duties effectively. AA employees also faced unfair disciplinary actions, termination of employment, and medical separation that leads to wrongful termination, which is different from their fellow coworkers of a different race, color, religion, sex, national origin, or age.

With over 2,000+ employees at SFPUC, there are a minimal number of Supervisory or Management positions offered, and/or filled by African Americans (AA). There are several Supervisory and Managerial (acting and permanent) positions that are provided to individuals who

COMPLAINT
PAGE 31 OF 37 *[JDC TEMPLATE – 08/16]*

are unqualified, unfair with no morals or ethics, corrupt, discriminatory, bias, and bigoted in their thinking; lack the proper qualifications for their titles, salaries, and authoritative positions; and lack sufficient knowledge and/or education (Degrees, License, Certifications).

Based on my own (past/current) experiences, I have personally witnessed, and shared the experiences of many other AA City employees; including working with African American as-needed, and/or potentially permanent City employees. Therefore, it appears that the SFPUC's employment opportunities within the City & County of San Francisco are not earnestly providing these qualified African American job applicants the same consideration when hiring and filling their permanent job opportunities. Especially whenever there is another potential candidate that may be less, but comparably qualified.

I have filed EEOC charges against the City and County of San Francisco in May 2015 and 2016, alleges ten causes of action for unlawful employment practices under federal and state law. Each cause of action is asserted against all defendants the City, the Public Utilities Commission, Management, supervisor, SFPUC – EEO Programs/Human Resources Services; and CCSF-Workers' Compensation Division (WCD). The nine causes action are: (1) discrimination in violation of California's Fair Employment and Housing Act (FEHA), Cal Govt. Code §§12900 et seq.; (2) retaliation in violation of FEHA; (3) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; (4) retaliation in violation *1088 of Title VII; (5) aiding and abetting retaliation and unlawful discrimination in violation of FEHA; (6) discrimination in violation of the California Constitution, Article I, Section 8; (7) discrimination and retaliation in violation of 42 U.S.C. section 1983 and the Equal Protection Clause of the Fourteenth Amendment; (8) discrimination and retaliation in violation of 42 U.S.C. section 1981; (9) wrongful demotion under California common law, and (10) discrimination and retaliation in violation of Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117. Plaintiff's discrimination, harassment, retaliation, and failure to provide reasonable accommodation claims are based on race and disability.

COMPLAINT

PAGE 32 OF 37 [JDC TEMPLATE – 08/16]

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Morris Green, Jr.<br>265 Vernon Street, Apt. 214<br>Oakland, CA 94610 | From: San Francisco District Office<br>450 Golden Gate Avenue<br>5 West, P.O. Box 36025<br>San Francisco, CA 94102 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2015-00803 | Judy Furukawa,<br>Investigator | (415) 522-3326 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

William R. Tamayo,
District Director

11/4/16
(Date Mailed)

cc:
**Justine Hinderliter**
**SAN FRANCISCO PUBLIC UTILITIES COMMISSION**
525 Golden Gate Avenue, 3rd Floor
San Francisco, CA 94102

age 33 of 37

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive this Notice*. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u>** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT**

Page 34 of 37

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Morris Green, Jr.
265 Vernon Street, Apt. 214
Oakland, CA 94610

From: San Francisco District Office
450 Golden Gate Avenue
5 West, P.O. Box 36025
San Francisco, CA 94102

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2016-00813 | Malinda K. Tuazon, Investigator | (415) 522-3126 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

William R. Tamayo,
District Director

11/4/16
(Date Mailed)

Enclosures(s)

cc: Linda Simon
Director EEO Programs
CITY & COUNTY OF SAN FRANCISCO
One South Van Ness Ave., 4th Floor
San Francisco, CA 94103

Page 35 of 37

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Page 36 of 37

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Page 37 of 37

RECEIVED

2017 FEB 46 PM 15

SUSAN Y. SOONG
CLERK,US DISTRICT COURT
NO. DIST. OF CA.